## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| FRED GOLSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06 C 3002 |
| | ) |
| MICHAEL J. ASTRUE, | ) Judge Rebecca R. Pallmeyer |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Fred Golston seeks judicial review of the Social Security Administration's (SSA) final decision denying Golston's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Both Plaintiff and Defendant Michael J. Astrue, Commissioner of the SSA,[1] have moved for summary judgment. For the reasons given below, Plaintiff's motion is denied and Defendant's motion is granted.

## FACTUAL BACKGROUND

In November 2003, Plaintiff filed an application for DIB and SSI payments, alleging disability as of October 6, 2002. (R. 27.) Plaintiff alleged that he is disabled as the result of diabetes, a condition which caused frequent urination, dizziness, blurred vision, swollen feet and joint pain. (R. 108-09.) After the claim was initially denied by the SSA, Plaintiff filed a timely request for a hearing. (R. 27.)

At the time of the hearing in June 2005, Plaintiff was sixty-two years old, had completed high school, and had attended two years of college. (R. 28.) He had last worked in October 2002, as a cashier at Wal-Mart. (R. 115.) Prior to holding that position, which he held for about one and a half years, he worked as a part-time garbage truck driver from 1999 to 2001; as a message courier from 1997 to 1999; as a self-employed carpenter from 1991 to 1999; and as an asbestos remover

---

[1] Pursuant to FED. R. CIV. P. 25(d), the court has substituted Michael J. Astrue for Jo Anne B. Barnhart as the named defendant-appellee.

from 1982 to 1990. (R. 115, 205-06.) According to Plaintiff, he reached an agreement with the management at Wal-Mart in October 2002 to leave his position because his need for frequent bathroom breaks, his dizzy spells, and his need to sit down often had become a problem. (R. 222.) Despite his concerns that "something wasn't right," Golston did not seek medical treatment until March 5, 2003, when he went to the emergency room at Cook County Hospital and was diagnosed with Type II diabetes. (R. 222, 131-32.)

In December 2003, Plaintiff stopped taking glipizide, the drug that he had been prescribed in March to treat his diabetes. (R. 29.) According to Plaintiff, he had run out of the medicine and the hospital required him to make another appointment to see a doctor before he could renew his medication; after two to three weeks of waiting for the appointment without the medication, he returned to the emergency room. (R. 217.) Golston was diagnosed with hypoglycemia,[2] renal insufficiency, elevated triglycerides, and elevated cholesterol, and his glipizide prescription was renewed. (R. 145.) Golston was instructed to keep up with his medication and check his blood sugar, and was discharged from the emergency room. (*Id.*) On February 3, 2004, the SSA reviewed Plaintiff's record and determined that he was capable of working six-hour days, occasionally lifting fifty pounds, and frequently lifting twenty-five pounds. (R. 147.)

Over the next several months, Plaintiff sought treatment at various area hospitals for elevated blood sugar levels. (R. 154-162.) On August 11, 2004, Plaintiff was examined by Dr. Stanley Rabinowitz pursuant to an SSA request for an examination. (R. 163.) Golston complained of intermittent blurred vision, soreness and aching in the feet, and spells of dizziness. (*Id.*) Dr. Rabinowitz diagnosed Golston as having adult-onset diabetes, but noted that there was no evidence of diabetic retinopathy, renal insufficiency, peripheral vascular disease, or peripheral neuropathy. (R.165.) In addition to the diabetes, Dr. Rabinowitz also diagnosed bilateral shoulder

---

[2] Hypoglycemia can occur as a side effect of diabetes medications that increase insulin production, including glipizide. See http://diabetes.niddk.nih.gov/dm/pubs/hypoglycemia/, last visited on January 20, 2009. It is thus curious that Golston, who had run out of his medication two to three weeks earlier, suffered from hypoglycemia.

pain, noting that the origins of the pain were unclear. (*Id.*) As for other tests, Dr. Rabinowitz noted that range of motion testing of joints and spine were normal, except for decreased range of motion in the lumbar spine (his lower back). (*Id.*) He noted further that although Golston exhibited mild difficulty in heel-toe walking and squatting, he nevertheless ambulated without difficulty. (*Id.*) The following week, a reviewing physician determined that Golston's impairment was not severe. (R.166).

Plaintiff petitioned SSA for hearing, which was held on June 24, 2005 in Orland Park, Illinois before Administrative Law Judge (ALJ) Robert G. White. (R. 25.) Golston reiterated many of the symptoms he had complained about in prior doctor visits, such as pain and swelling in his feet occurring about once a week and blurred vision about three times a week. (R. 217-19.) Dr. Sheldon Slodki, an SSA physician who had reviewed Plaintiff's medical record but had not performed his own examination, testified that many of Plaintiff's symptoms were characteristic of diabetes. (R. 209-11.) Dr. Slodki also noted that Plaintiff was obese; his body mass index (BMI) was 34. (R. 209.) In Dr. Slodki's view, Plaintiff's failure to control his weight and to consistently take his medication were the principal reasons he was suffering adverse effects. (R. 210-11.) Nothing in Plaintiff's medical records indicated to Dr. Slodki that Plaintiff would be unable to perform medium exertional work. (R. 212.) Finally, Lee Knutson, a vocational expert, testified in response to a hypothetical question that if Plaintiff retained the ability to perform a full range of medium exertional work, albeit not able to lift more than twenty-five pounds over his head, then he could perform his past jobs of cashier, courier, and garbage truck driver, but not the jobs of an asbestos remover or carpenter. (R. 226.)

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ first noted that he did not fully credit all of Plaintiff's claims regarding his impairment. (R. 30.) Most notably, the ALJ found that Plaintiff's complaints of urinary urgency were not credible, based both on Plaintiff's failure to seek treatment for the condition for five months after losing his

job at Wal-Mart, and on Plaintiff's testimony that he had spent most of the day prior to his hearing out shopping with his granddaughter in downtown Chicago. (R. 30-31.) Contrary to the state agency's determination, the ALJ found that Plaintiff had a "severe" impairment. (*Id.*) He found that Plaintiff was nevertheless capable of performing medium exertional work that did not require lifting more than twenty-five pounds over his head. (R. 31-32.) With these lifting restrictions, Plaintiff remained able to perform some of the jobs he had previously held, including cashier, messenger, and garbage truck driver, and therefore was not disabled as defined by SSA regulations. (R. 32.)

The Appeals Council of the SSA denied Plaintiff's request for review in April 2006. (R. 4.) Plaintiff filed the present action on May 31, 2006, seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). Both Plaintiff and Defendant moved for summary judgment, and Plaintiff also alternatively moved to reverse the decision and remand the case to SSA.

## **DISCUSSION**

**I.  Standard of Review**

Because the Appeals Council denied review, the ruling by the ALJ is treated as SSA's final decision. 20 C.F.R. § 404.981; *see also Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006). While purely legal issues are reviewed de novo, courts will uphold an ALJ's factual determinations if they are supported by substantial evidence. *Prochaska*, 454 F.3d at 734. Substantial evidence is more than a mere scintilla, *Richardson v. Perales*, 402 U.S. 389, 401 (1971); rather, the evidence must be "sufficient for a reasonable person to accept as adequate to support the decision." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (quoting *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002)). In addition, the ALJ must provide some explanation for his findings. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Provided the ALJ does so, the court will not re-weigh the evidence or substitute its own judgment for that of the ALJ. *Skarbek*, 390 F.3d at 503 (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)).

Plaintiff argues that the ALJ's conclusion that he was not disabled misapplied the law and

was not based on substantial evidence. A claimant is considered "disabled" by the SSA only if he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). To determine if a claimant meets this definition, the SSA employs a five-step analysis: (1) whether the claimant is currently working; (2) whether the claimant is severely impaired; (3) whether the claimant's impairment meets or equals one of the impairments listed by the SSA in 20 C.F.R. § 404, subpt. P, App. 1; (4) based on the claimant's residual functional capacity, whether the claimant can perform his past work; and (5) whether the claimant is capable of performing other work. *See* 20 C.F.R. § 416.920(a)(4); *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). Since the ALJ found that Plaintiff was severely impaired, the only issue in dispute on this appeal is the ALJ's conclusion that Plaintiff was not disabled because he was capable of performing previously-held jobs.

## II. ALJ's Claimed Errors

Plaintiff claims that the ALJ's disability determination is flawed for three separate reasons. First, Plaintiff claims that the ALJ failed to properly consider the effect of Plaintiff's obesity on his ability to work. Second, Plaintiff argues that the ALJ erroneously discounted Plaintiff's credibility in considering the evidence and thus did not properly weigh the evidence. Finally, Plaintiff claims that the ALJ erred in finding that Plaintiff was capable of medium exertional work because that conclusion is not supported by substantial evidence. The court considers each argument in turn.

### A. Plaintiff's Obesity

Plaintiff contends that the ALJ disregarded an SSA ruling addressing how obesity should be considered in disability determinations. *See* SSR 02-1p, 67 Fed. Reg. 57859. Plaintiff claims that the ALJ himself failed to consider Plaintiff's obesity, in violation of the SSA ruling. In addition, Plaintiff faults the ALJ for relying almost exclusively on Dr. Slodki's findings, who Plaintiff claims

5

also misunderstood and misapplied the SSA ruling. Finally, Plaintiff argues that the ALJ misapplied SSR 02-1p by determining that he was not complying with his doctor's orders requiring him to lose weight to remedy his obesity.

Plaintiff's first contention, that the ALJ was required by the SSA ruling to directly consider Plaintiff's obesity when making his findings, is incorrect. First, the ALJ did note in his opinion that Plaintiff has previously been diagnosed with obesity, but declined to further address it because Plaintiff did not claim the obesity "significantly limited his ability to perform basic work activities." (R. 29.) Additionally, the ALJ explicitly rested his disability findings on "the medical expert's testimony that only claimant's diabetes is a medically determinable impairment likely to have a significant effect on claimant's capacity for work." (*Id.*) Contrary to Plaintiff's argument, the ALJ is entitled to rely upon the opinion of an examining physician, provided the physician himself considered Plaintiff's obesity in formulating his opinion. *Skarbek v. Barnhart*, 390 F.3d at 504 ("although the ALJ did not explicitly consider [plaintiff's] obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions."); *see also Prochaska v. Barnhart*, 454 F.3d at 736 ("A failure to explicitly consider the effects of obesity may be harmless error."). Therefore, to the extent that the ALJ erred in not directly making any explicit findings regarding Plaintiff's obesity, the error is harmless, provided that the doctor's report upon which the ALJ relied took the obesity into account, as it did here.

Plaintiff next makes the related argument that Dr. Slodki misapplied SSR 02-1p in making his determinations. The SSA stated that "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." SSR 02-1p, 67 Fed. Reg. at 57862. In *Young v. Barnhart*, the court relied on this Social Security ruling to remand an ALJ's finding of no disability because the ALJ relied on a doctor's report that did not clearly consider the Plaintiff's "extreme" obesity. 282 F. Supp. 2d 890, 896 (N.D. Ill. 2003). In *Young*, the ALJ relied on a doctor

who himself had relied solely on another doctor's report in making his findings.  *Id.*  Dr. Slodki, ;in contrast, reviewed all of Golston's medical evidence submitted in the record, consisting of doctors' notes and reports over the course of approximately two years.  (R. 208.)  Unlike the doctor in *Young*, Dr. Slodki clearly mentions Plaintiff's obesity, noting that it is not morbid and that Plaintiff's body mass index is 34.  (*Id.* at 209.)  Indeed, while Plaintiff's BMI does indicate that he was obese within the meaning of SSR 02-1p, it was only Level I obesity, less severe than the plaintiff in *Young* whose obesity was nearly Level III.  *Young*, 282 F. Supp. 2d at 896; SSR 02-1p, 67 Fed. Reg. at 57860.  Given the minor severity of the obesity, then, it is unsurprising that the record does not contain more references to this condition.

Indeed, this level of review is consistent with decisions of the Seventh Circuit.  In *Skarbek v. Barnhart*, the court upheld an ALJ's determination that a claimant with Level I obesity was not disabled, even though the ALJ did not even mention the claimant's obesity in his ruling.  390 F.3d at 504.  In so holding, the court emphasized that the ALJ adopted the recommendations of reviewing doctors who were familiar with the claimant's obesity and that the claimant did not explain how his obesity should have affected the ALJ's analysis.  *Id.*  Similarly, in *Prochaska v. Barnhart*, the Seventh Circuit again upheld an ALJ's findings despite the lack of any explicit mention of obesity because the ALJ relied on doctors who did consider obesity and the claimant did not explain how a more thorough consideration of obesity would have changed the findings.  454 F.3d at 737.  In the case before this court, too, the ALJ relied upon the report of doctors who had considered the claimant's obesity, and the Plaintiff failed to clearly articulate how a different obesity finding would have altered the ALJ's findings.  Indeed, unlike the two Seventh Circuit cases, ALJ White actually explicitly refers in his written opinion to Plaintiff's obesity diagnosis.  Obesity was thus considered by both the ALJ and Dr. Slodki to some extent, and the relatively brief consideration of Plaintiff's Level I obesity is consistent with SSR 02-1p's statement that the importance of obesity to a determination of functional limitation will be evaluated on a case-by-case basis.

Finally, Plaintiff also contends that the ALJ misapplied SSR 02-1p by improperly determining that Plaintiff was non-compliant with the treatment recommended for his obesity. Normally, the SSA is entitled to deny benefits when an individual fails to follow treatment that would enable him to work, 20 C.F.R. 404.1530, 416.930, but the SSA "will rarely use 'failure to follow prescribed treatment' for obesity to deny or cease benefits." SSR 02-1p, 67 Fed. Reg. at 57864. Plaintiff's argument is irrelevant, however, because the ALJ based his opinion denying benefits not on any lack of compliance with medical directives, but on his determination that Plaintiff could handle work of medium exertion. (R. 31-32.) Dr. Slodki's opinions stated in the record about Plaintiff's failure to lose weight may have been at odds with the opinions expressed in SSR 02-1p, but this does not constitute reversible error because the ALJ did not dismiss Plaintiff's claim on the basis of non-compliance. Substantial evidence supported the ALJ's findings, and therefore the ALJ did not violate SSR 02-1p by disqualifying Plaintiff based on failure to comply with prescribed obesity treatment.

### B.  Plaintiff's Credibility

Next, Golston argues that the ALJ's credibility determinations were erroneous. Given the inability of a reviewing court to see the witnesses, a court will generally not overturn an ALJ's credibility determinations unless they were "patently wrong" and unsupported by the evidence. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)); *see also Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). In *Zurawski*, for example, the court overturned an ALJ's findings when the ALJ stated that the plaintiff's complaints were "not entirely credible due to the inconsistencies with the objective medical evidence, and inconsistencies with daily activities," but did not explain what the inconsistencies were. *Zurawski*, 245 F.3d at 887. Even there, the court noted that it was not holding "that the ALJ's credibility determination was incorrect, but only that greater elaboration is necessary." *Id.* at 888.

Unlike the ALJ in *Zurawski*, ALJ White provided an explanation for his determination that

Golston was not credible. First, the ALJ discounted Plaintiff's claims of urinary urgency because even though Plaintiff claimed that it was a precipitating factor in his termination from his cashier job in October 2002, he did not see a doctor about the condition until March 2003. In the ALJ's estimation, Plaintiff would have seen a doctor much earlier if that symptom were truly keeping him from getting a job. The ALJ further noted that Plaintiff spent a long day with his granddaughter the day before the hearing and was not apparently troubled by serious urinary urgency. Plaintiff argues that this credibility determination is flawed because the ALJ fails "to recognize that this described symptom is consistent with Mr. Golston's medical condition." (Pl.'s Mem. at 14.) This misstates the standard, however: the court does not review an ALJ's determination to see if the evidence is consistent with a different conclusion, but only to see if the evidence is inconsistent with the ALJ's actual conclusion. *See Sims*, 442. F.3d at 538. The fact that urinary urgency is consistent with Plaintiff's medical condition does not establish that he was actually symptomatic, or that the symptoms were as severe as he claimed. SSR 96-7p, 61 Fed. Reg. 34483, 34484 ("[T]he intensity, persistence, and functionally limiting effects of the symptom[] must be evaluated" by the ALJ, who must make his decision based on "a finding about the credibility of the individual's statements . . . ."). The court cannot conclude that the ALJ's credibility determination concerning Plaintiff's urinary urgency was unsupported by the evidence upon which the ALJ explicitly relied.

Plaintiff also argues that the ALJ improperly discredited his testimony about his intermittent blurred vision, dizziness, and sore feet. Noting that none of Plaintiff's treating physicians recorded these symptoms, the ALJ found that they were not totally credible. Again, Plaintiff's argument that these symptoms are all consistent with his medical condition is irrelevant, because the ALJ clearly articulated his reason for discrediting this testimony, and his reasoning is supported by substantial evidence. Finally, the ALJ's credibility determination also relied in part on the inconsistency between Plaintiff's testimony that his doctors did not inform him of the need to lose weight and notes from doctors showing that they did instruct him to do so. Plaintiff concedes that his testimony

"is not completely consistent with notations in the medical record," but nevertheless contends that the difference is not as great as the ALJ made it seem. (Pl.'s Mem. at 15.) The court need not consider this argument, however, because it will not re-weigh evidence that has already been considered by the ALJ. *Skarbek*, 390 F.3d at 503. A review of the ALJ's written findings makes clear that his credibility determinations were not "patently wrong" and were in fact supported by the evidence. Therefore, there is no need to reconsider the ALJ's determination that he "could not fully credit [Golston's] complaints." (R. 31.)

### C. Medium Exertional Work

Finally, Plaintiff contends that the ALJ's determination that Plaintiff is capable of medium exertional work is not supported by substantial evidence. Plaintiff highlights three specific physical conditions from which he suffered that purportedly disqualify him from being able to perform medium exertional work.

First, Plaintiff argues that his limited lumbar range of motion prevents him from performing medium exertional work; at the very least, Plaintiff claims that the ALJ's failure to adequately address his limited range of motion requires a remand of this case so the ALJ can provide an explanation. Dr. Rabinowitz noted that Golston's ability to bend his lumbar spine was limited to 80 degrees flexion, 20 degrees extension, and 20 degrees right and left lateral rotation.[3] (R. 164.) Plaintiff's first claim of error, that this condition disqualifies him from being able to perform medium exertional work, is without merit. Dr. Rabinowitz noted in his report that the Plaintiff's lumbar flexibility was below normal limits, but did not find any functional impairments that resulted from this below-average flexibility. To the contrary, Dr. Rabinowitz stated that the patient was able to walk without the use of an assistive device and had only "mild difficulty" with heel-toe walking and

---

[3] Neither party has presented any evidence of what normal flexibility ranges would be. According to the American Medical Association, a normal range of motion for the lumbar spine generally consists of sixty degrees flexion, twenty-five degrees extension, and twenty-five degrees lateral rotation. AMA, *Guides to the Evaluation of Permanent Impairment* 407, 409 (5th ed. 2001).

10

squatting. (R. 165.) The ALJ referred to this condition only once, dismissing it as "some minimal loss of motion in the claimant's lower back." (R. 30.) Consistent with the ALJ's conclusions, nothing in Dr. Rabinowitz's findings suggests that Plaintiff's limited range of lumbar motion would make him unable to perform medium exertional work, or to work in one of his past jobs as a cashier. The ALJ's determination that the reduced flexibility of Plaintiff's lumbar spine was only minimal is therefore supported by substantial evidence.

Alternatively, Plaintiff argues that the ALJ did not adequately explain his findings and the court should remand the case to enable him to do so. *See Clifford*, 227 F.3d at 872. While Plaintiff is correct that the ALJ only once refers to Plaintiff's decreased lumbar flexibility, this sole reference occurs in the sentence immediately preceding the ALJ's determination that Plaintiff has a severe impairment and is capable of medium exertional work with a twenty-five pound restriction on overhead lifting. (R. 30.) This satisfies the court that the ALJ did not merely make a passing reference to Plaintiff's back condition, but actually considered it in making his determination of Plaintiff's functional capacity. The ALJ did not need to provide a more thorough explanation.

Plaintiff next argues that limited range of motion in his shoulder that prevents him from being able to lift heavy objects over his head disqualifies him from medium exertional work. The standard for finding a disability is whether the Plaintiff could perform his own past work, however, not whether he could perform all jobs in a certain category. 20 C.F.R. § 416.920(a)(4)(iv). Even assuming that this limitation prevents him from doing some medium exertional work, Plaintiff has not argued that he would not be capable of working again as a cashier as a result of this condition. At claimant's hearing before the ALJ, the vocational expert testified that even with this inability to lift heavy objects over his head, an individual who was otherwise capable of medium exertional work could still perform some, though not all, of Plaintiff's past jobs, including those of cashier, courier, and garbage truck driver. (R. 226.) Notably, he ALJ did specifically credit Plaintiff's complaints of shoulder pain—even though the state agency found that Plaintiff had no severe impairment, the

11

ALJ found that Plaintiff's frequent complaints of shoulder pain limited him to only medium exertional work that involved lifting less than twenty-five pounds overhead. (R. 30.) Thus, the ALJ found that the shoulder pain Plaintiff experienced imposes a twenty-five pound restriction in overhead lifting, but does not disqualify Plaintiff from being able to perform medium exertional work. *See Skarbek*, 390 F.3d at 503.

Finally, Plaintiff again argues that his need to take frequent urinary breaks precludes him from finding work. The ALJ found this component of Plaintiff's testimony not credible and believed that it did not present a serious barrier to Plaintiff holding a job. For the reasons given above, the court defers to the ALJ's credibility finding. Therefore, his claimed need for frequent urinary breaks does not prevent him from being able to obtain a job in the national economy.

## **CONCLUSION**

For the reasons given above, Plaintiff's Motion for Summary Judgment [16] is denied and Defendant's Motion for Summary Judgment [19] is granted.

ENTER:

Dated: January 20, 2009

REBECCA R. PALLMEYER
United States District Judge